**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **ADAM DROR, *et al.*,** | ) | CASE NO. 1:22-cv-02183 |
|  | ) |  |
| Plaintiffs, | ) | JUDGE PAMELA A. BARKER |
|  | ) |  |
| -vs- | ) |  |
|  | ) |  |
| **GEORGE NAKHLE, *et al.*,** | ) |  |
|  | ) |  |
| Defendants. | ) |  |

---

**MOTION TO DISMISS PLAINTIFFS'**
**FIRST AMENDED COMPLAINT**

---

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants George Nakhle ("***George Nakhle***"); Samir Nakhle ("***Samir Nakhle***" and together with George Nakhle, the "***Nakhles***"); Richard Russel Gutzky ("***Gutzky***"); GS & M LLC ("***GS & M***"); Nadam LLC ("***Nadam***"); RG Holdings Delaware, LLC ("***RG Delaware***"); RG Holdings Perm, LLC ("***RG Perm***"); RG Holdings Perm II, LLC ("***RG Perm II***"); RSN Holdings I, LLC ("***RSN I***"); RSN Holdings II, LLC ("***RSN II***"); RSN Holdings 4, LLC ("***RSN 4***"); RSN Holdings XV, LLC ("***RSN XV***"); RSN Holdings XXI, LLC ("***RSN XXI***"); RSN Holdings Delaware, LLC ("***RSN Delaware***"); R.S.N. Properties LLC ("***RSN Properties***"); United Synergy Group, LLC ("***United Synergy***"); 6395 Pearl Road LLC ("***Pearl Road***"); and Park Knoll, LLC ("***Park Knoll***") (collectively, the "***Movants***"), by and through counsel, respectfully request that this Court dismiss Plaintiffs Dror Adam ("***Adam***"); Adam Beres LLC a/k/a Adam Beres One LLC ("***ABO***"); Beres Adam One LLC ("***BAO***"); D. Mody Properties, Ltd. ("***D. Mody***"); RSN Finance, LLC ("***RSN Finance***"); Shnizel OH LLC ("***Shnizel***"); Zuk Domestic Holdings, Inc. ("***Zuk***"); and Zuk Marble Products, Ltd.'s ("***Zuk Marble***") (collectively,

1

the "**Plaintiffs**") First Amended Complaint (ECF # 10) (the "**Federal Complaint**") as to all counts alleged against Movants. First and foremost, Plaintiffs were compelled under the Ohio procedural rules to bring their claims in pending state court litigation involving the same set of transactions, overlapping parties, and common legal issues, and thus, this Court is now barred from adjudicating this dispute. Indeed, this District has already determined that this matter is best suited for the Cuyahoga County Court of Common Pleas (the "**CCCCP**"), which has been overseeing the dispute among Plaintiffs and Movants for nearly three years.[1] The Court should not condone Plaintiffs' clear attempt to forum shop their compulsory claims, which they were required to bring in the CCCP cases, and now should be deemed waived due to their own actions. Additionally, Plaintiffs fail to state cognizable claims for violations of the Racketeer Influenced and Corrupt Organizations Act (the "**RICO Act**"), fraud, restitution under the faithless servant doctrine, and piercing the corporate veil.  In short:

- Plaintiffs waived their right to bring their claims in this forum and cannot be allowed to continue to forum shop their compulsory claims, which they brought and dismissed multiple times in the pending CCCCP cases and this District, and as a result, now must be dismissed, **with prejudice**;

- Plaintiffs did not—and cannot—allege that Movants created a scheme with an intent to conduct racketeering activity as required under the RICO Act or other required specificity to withstand a motion to dismiss the RICO Act claim and fraud claims; and

- Not only are piercing the corporate veil and the faithless servant doctrine not stand-alone claims, but also Plaintiffs lack requisite standing to bring a derivative claim or the assigned claims of the Investors or Bavaria.[2]

---

[1] On March 16, 2022, the Honorable Judge Dan Aaron Polster determined that the Cuyahoga County Court of Common Pleas was best suited to decide the dispute between Plaintiffs and Movants. *See D. Mody Properties, et al. vs. R.S.N. Properties, LLC, et al.,* Case No. 1:21-CV-1395 at ECF # 15, ordering that "[b]ecause the parties should resolve all of their claims in the same forum, and they have already begun this process in state court, the Court hereby DISMISSES the captioned case, without prejudice."

[2] Any capitalized term not herein defined shall take on the same meaning as set forth in Plaintiffs' First Amended Complaint (ECF # 10).

4863-1731-0557, v. 1

Accordingly, Movants request that the Court issue an order dismissing the Federal Complaint as to Movants **with prejudice**. A Memorandum in Support is attached hereto and incorporated herein.

Respectfully submitted,

**KOHRMAN JACKSON & KRANTZ, LLP**

*/s/ Scott A. Norcross*
SCOTT A. NORCROSS (0073407)
NATHAN F. STUDENY (0077864)
PAIGE M. RABATIN (0097916)
ANDREA V. ARNOLD (0099455)
One Cleveland Center, 29th Floor
1375 East Ninth Street
Cleveland, Ohio  44114
Phone:  (216) 696-8700
Fax:  (216) 621-6536
Email: san@kjk.com; nfs@kjk.com; pmr@kjk.com; ava@kjk.com
*Counsel for Movants*

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION.

Despite Plaintiffs' conspiracy-laden Federal Complaint, this matter is a simple and straightforward tale of contractual real estate transactions not materializing in ways in which the individuals and entities involved had hoped and intended, creating an ongoing game of finger-pointing. Here, there is no dispute that Adam and his entities, ABO and BAO, along with Shnizel (as purported assignee of seventy-eight (78) investors/owners),[3] D. Mody, Zuk, and Zuk Marble voluntarily, willingly, and consciously entered into contractual real estate transactions with Movants and continued to do so even after—as Plaintiffs admit—initial issues arose in 2017.

Plaintiffs' finger pointing began on May 29, 2020, in the CCCCP with the action styled *Adam Beres, LLC aka Adam Beres One, LLC, et al. vs. George Nakhle, et al.,* Case No. CV-20-932929 (the "***First State Court Case***"). Therein, ABO, Zuk, D. Mody, and RSN Finance alleged claims against George Nakhle, RSN Properties, United Synergy, RG Delaware, RG Perm, RSN Holdings, Pearl Road, and non-party CoreVest American Finance Lender LLC ("***CoreVest***") related to the operations of and loans made to RSN Finance, i.e. what Plaintiffs deem in their Federal Complaint as the "JV Fraud." On June 23, 2020, Plaintiffs Adam, ABO, and BAO initiated a second action in the CCCCP styled *Dror Adam, et al. vs. George Nakhle, et al.,* Case No. CV-20-933677 against George Nakhle, RSN Holdings, RSN Delaware, RSN 4, RG Delaware, Nadam, and CoreVest (the "***Second State Court Case***"), alleging claims related to financing of the real estate transactions at issue, i.e. what Plaintiffs deem in their Federal Complaint as the "Loan Fraud."

And on January 15, 2021, yet another action was initiated in the CCCCP styled *Shnizel*

---

[3] Questionably, Plaintiffs provide no supporting documents with the Complaint that the claimed Investors have actually assigned their purported claims to Adam.

*Ohio LLC vs. George Nakhle, et al.,* Case No. CV-21-943024 (the "***Third State Court Case***" and with the First State Court Case and the Second State Court Case, the "***State Court Cases***")[4] wherein Shnizel alleged claims against the Nakhles, RSN Holdings, GS & M, RSN 4, RG Delaware, RG Perm, RSN Delaware, RG Perm II, and other parties including CoreVest related to the purchase and financing of the properties at issue, i.e. what Plaintiffs deem in their Federal Complaint as the "Property Fraud."

In response to the claims in the First State Court Case, George Nakhle, RSN Properties, United Synergy, RG Delaware, RG Perm, RSN Holdings, and Pearl Road (together, the "***Counterclaimants***") alleged a counterclaim for declaratory judgment related to the ownership of certain real estate, breach of fiduciary duty, slander of title, and abuse of process (the "***Counterclaims***"). Therein, Counterclaimants alleged that Plaintiffs wanted Counterclaimants, who are United States residents and companies, to hold title to the Properties to more easily obtain adequate financing. With this, Adam's scheme to siphon funds away from the Investors was revealed: Adam was not applying payments to the Land Contracts and instead was diverting funds. As more fully discussed below, the Counterclaims remain pending and bar Plaintiffs from litigating the Federal Complaint in not just this Court but any other court besides the CCCCP.

Rather than litigate all claims arising from the same contractual real estate transactions in the pending State Court Cases, Plaintiffs first attempted to forum shop by initiating a prior, related action in this District styled *D. Mody Properties, Ltd., et al. vs. R.S.N. Properties, LLC, et al.*, Case No. 1:21-CV-01395 (the "***First Federal Case***"). Therein D. Mody and Zuk Marble brought

---

[4] Notably, the CCCCP consolidated the State Court Cases and Counterclaims into a single action. The CCCCP also consolidated related foreclosure actions into the case styled *Wilmington Trust, National Association vs. RG Holdings Perm II, LLC, et al.*, Case No. CV-22-965640 and appointed a receiver to oversee certain of the Properties set forth in Exhibit 1 of the Federal Complaint. As Plaintiffs admit, the receiver has been appointed for a majority of the Properties at issue, which has already required Plaintiffs to amend. *See* Compl. at ¶18.

contractual claims against RSN Finance and RSN Properties related to financing the transactions through RSN Finance, i.e. what Plaintiffs deem in their Federal Complaint as the "JV Fraud." The Honorable Judge Dan Aaron Polster swiftly and smartly dismissed the First Federal Case without prejudice in recognition of the pending State Court Cases involving the same parties, transactions, and occurrences.

Plaintiffs' strategic "new" allegations and addition of "new" parties in the Federal Complaint does not change the fact that, as astutely recognized by Judge Polster, the CCCCP is best suited to decide the dispute between Movants and Plaintiffs and has been doing so for nearly three years across two consolidated case tracks. Importantly, seven of the eight Plaintiffs here are plaintiffs in the State Court Cases with Zuk Marble, an obvious affiliate of Zuk, being the only federal Plaintiff without a State Court Case against one or more of Movants. Considering the pending claims of the State Court Cases, each of which involve the same transactions and occurrences that form the foundation of the Federal Complaint, Plaintiffs were required to bring and litigate their compulsory claims in the State Court Cases. Since they chose not to do so multiple times, Plaintiffs have now waived their right to reallege them in this forum. Moreover, Plaintiffs' claims under the RICO Act (which, again, were required to be brought in the State Court Cases) and for fraud, piercing the corporate veil, and the faithless servant doctrine do not pass muster under Fed. R. Civ. P. 12(b)(6). In addition, Plaintiffs have failed to attach requisite information to the Federal Complaint to support their derivative claim and claims brought on behalf of the Investors and Bavaria. Accordingly, Plaintiffs' Federal Complaint should be dismissed, ***with prejudice***.

## II.  ALLEGED FACTS.

As conceded in the Federal Complaint, Plaintiffs willingly, voluntarily, and consciously

did business with Movants for years—even after initial issues arose.  Plaintiffs' allegations—both old and "new"—depict themselves as disgruntled, hands-off business partners who knowingly consented to Movants' management of the various entities and consciously followed the Nakhles and Gutzky's guidance with respect to the real estate transactions at issue. These real estate transactions are the exact same transactions at issue in the CCCCP and therefore constitute the same transaction or occurrence for purposes of preclusion under Ohio Rule of Civil Procedure 13(A) ("*Civ.R. 13(A)*"). Further, absent from the Federal Complaint is not only the required specificity needed to withstand a motion to dismiss but also Adam's (and his entities) involvement in the purported tranches.

### A.  The Purported Property Fraud.

For example, the pseudo anonymous investors/owners, who assigned their claims to Shnizel (the "*Investors*"), not only negotiated the sale but also solicited the 192 properties identified in Exhibit 1 to the Federal Complaint (the "*Properties*"). As alleged in the Federal Complaint, the Investors then willingly entered into letter agreements (the "*Property LOAs*") with the Nakhles, consciously negotiated the prices of the Properties, and voluntarily sold the Properties via the land installment contracts (the "*Land Contracts*"). Compl. at ¶¶ 66-68. Plaintiffs then admit the Investors were not keeping a watchful eye over the Properties despite still having an interest. Instead, the Investors trusted Adam and his entities as well as Movants to manage the Properties, including repairs and collection of rents, and operate their real estate investments. *See, e.g.,* ¶¶ 66-68, 86-87.

As Plaintiffs concede, the parties to the Land Contracts envisioned a five (5) year fulfillment timeline, meaning that Plaintiffs understood that some or all of Movants' respective obligations under the Land Contracts would not be fulfilled as of the dates Plaintiffs not only

initiated the State Court Cases and First Federal Case but also this action. Compl. at ¶ 69. During

that five-year period, the Investors consciously assigned title of certain Properties to the respective

Movants so additional financing could be obtained to fulfill the obligations under the Land

Contracts. *See, e.g.,* ¶¶ 105-17. Indeed, the Lot One Supplement Agreement and Lot Two

Supplemental Agreement, as well as Plaintiffs' admission that the Investors negotiated and agreed

to the "conveyance prices," demonstrate that not only did Movants accurately represent the

material facts enough so that the agreements could be memorialized, but also that Movants were

working towards fulfilling their obligations under the respective Land Contracts. ¶¶ 182-83, 187-

89. Despite Movants' best efforts, Plaintiffs initiated the State Court Cases, the First Federal Case,

and the instant action.

### B.      The Purported JV Fraud.

Because the Investors were not interested in the day-to-day management or general upkeep

of the Properties,[5] ABO, D. Mody, Zuk, and RSN Properties created RSN Finance to "acquire,

improve, sell and lease real estate, and finance and refinance real estate transactions." Compl. at ¶

87. Evidencing their agreement, ABO, D. Mody, Zuk, and RSN Properties entered into an

operating agreement, **Exhibit 12** of the Federal Complaint.

Under D. Mody, Zuk, ABO, and RSN Properties' agreement, D. Mody and Zuk agreed to

commit $1,000,000 each in loans to RSN Finance with ABO providing an additional $1,000,000

loan a year later in 2018. Compl. at ¶¶ 90, 102. However, ABO defaulted on its loan obligation,

and instead, ABO, and by extension Adam, and George Nakhle agreed that the payments due on

the Land Contracts would be paid directly to RSN Finance. Compl. at ¶ 156. As a result, Plaintiffs'

---

[5] Indeed, the Investors' disinterest extends to the statements they respectively made in the Land Contracts related to the vacancy and occupancy of certain of the Properties. *See, e.g.,* Compl. at Exh. 13.

allegations related to payments under the Land Contracts—prior to the Investors' voluntary assignments—are intentionally misguided.

ABO's failures to perform then absolves RSN Properties of its failures, if any, to fulfill any obligation under the agreement. Compl. at ¶ 159. Despite the clear legal excuse of RSN Properties' performance, Plaintiffs allege that RSN Finance's operating agreement was breached but fail to acknowledge ABO's, and by extension Adam's, breach of the same.

### C.  The Purported Nadam and Bavaria MF Fraud.

The purported Nadam and Bavaria MF Frauds are mere offshoots of the purported JV Fraud. With respect to the Nadam Fraud, Plaintiffs state that it is "almost identical to the JV Fraud" and involved creating Nadam to "acquire, manage and sell real estate investment properties, much the same as RSN Finance, but on a smaller scale and with fewer properties." Compl. at ¶¶ 5, 119. Nadam's first venture was the Byron Property, which Plaintiffs allege was transferred to RG Delaware in the purported Property Fraud. Compl. at ¶ 123.

Similar to the purported JV and Nadam Frauds, according to the Federal Complaint, RG Delaware entered into an agreement with Bavaria whereby RSN I would purchase the multi-dwelling Bavaria Property from Bavaria. Compl. at ¶¶ 203-05. As Plaintiffs allege, an initial loan from Adam, which constitutes part of the purported Loan Fraud, was used to purchase the Bavaria Property. But Plaintiffs allege that George Nakhle, through RSN I, fulfilled only initial portions of RSN I's obligations under said loan. *Id.*

### D.  The Purported Loan Fraud.

As alleged in the Federal Complaint, the purported Loan Fraud is interwoven throughout the real estate transactions at issue, most notably through the Nadam and Bavaria transactions. The First Loan consisted of $125,000 to RSN I from BAO, with 9% interest, and with quarterly interest

payments and payment of principal after two years, November 1, 2019. Compl. at ¶¶ 84-85. Beyond Plaintiffs' conclusory statement alleging that George Nakhle had any intent to repay the First Loan, Plaintiffs fall short of alleging intent with specificity as required under federal pleading standards for RICO Act or fraud claims. Compl. at ¶¶ 85-86.

The Second Loan relates to Lot Two and consisted of an $11,000 obligation of RSN I made in January 2019 by BAO with payment due in February 2019. Compl. at ¶ 195. Again, Plaintiffs fall short of alleging any actual intent of RSN I to never repay the Second Loan. The Third Loan relates to the Bavaria Property, and according to the Federal Complaint, it appears that Adam personally loaned RSN I and George Nakhle $144,000 on April 8, 2019, after the Second Loan. Compl. at ¶¶ 197-99. The Third Loan was used to purchase the Bavaria Property, and $3,080 monthly interest payments were due on the Third Loan "directly to Adam's lenders," which may have included payments to RSN Finance based on Plaintiffs' statement that when ABO failed to fund RSN Finance, Adam and George Nakhle agreed that the proceeds from the Land Contracts would be paid directly to RSN Finance. Compl. at ¶¶ 156, 199. As Plaintiffs admit, and similar to the First Loan, RSN I initially fulfilled its obligations under the Third Loan. Compl. at ¶¶ 200-01. As with Plaintiffs' allegations about the First Loan and Second Loan, Plaintiffs fall short of alleging the actual intent to defraud. Indeed, Plaintiffs admit that George Nakhle, through RSN I, initially fulfilled its obligations under the First Loan and Third Loan.

### E.  **Plaintiffs' Fatal Pleading Flaws.**

Notably absent from the Federal Complaint are the precise details of the purported multiple tranches of fraud that federal law requires Plaintiffs to plead with heightened particularity. Beyond lacking allegations related to George Nakhle, RSN I, and RG Delaware's intent with the purported Loan Fraud, Nadam Fraud, and Bavaria Fraud, ABO's failure to loan $1,000,000 to RSN Finance,

10

which occurred prior to the purported Loan Fraud, lifted RSN Properties from its funding obligations as to RSN Finance. With the purported Property Fraud, Plaintiffs admit that the Investors assigned the Land Contracts to Movants to secure additional funding for the Properties. And yet again, Plaintiffs fall short of demonstrating Movants intent at that time to defraud.

In addition, Plaintiffs make conclusory statements as to Movants' use of the mail, internet, and instrumentalities of interstate commerce to support their RICO Act claims. *See, e.g.,* Compl. at ¶¶ 92, 108, 116, 129, 143, 151, and 239. Missing from the Federal Complaint are Plaintiffs' actual allegations of time, place, method, and content of the underlying mail and wire fraud. Also missing from the Federal Complaint is any verification related to a derivative claim under Fed. R. Civ. P. 23.1 as well as any evidence of the Investors' assignment to Shnizel or Bavaria's assignment to Adam. Moreover, under Ohio law, piercing the corporate veil and the faithless servant doctrine are not standalone claims. Accordingly, Plaintiffs fail to meet their heightened pleading standards as well as necessary elements for derivative actions and assigned claims, requiring dismissal.

### III.  LAW & ANALYSIS.

#### A.  Legal Standard for a Motion Made Pursuant to Fed. R. Civ. P. 12(b)(6).

"To survive a motion to dismiss" under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2004)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draft the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  However, a complaint fails to state a claim for relief where,

such as here, "it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678.

Further, while a court must accept all factual allegations as true, this rule does not apply to legal conclusions. *See id.* "[T]hough construing the complaint in favor of the non-moving party, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations." *Duro Corp. v. Canadian Standards Assoc.,* No. 1:17CV1127, 2017 U.S. Dist. LEXIS 203296, at *3 (N.D. Ohio Dec. 11, 2017). Accordingly, to satisfy federal pleading standards, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Twombly*, 550 U.S. at 555.

### B. Civ.R. 13(A) Precludes Plaintiffs From Litigating This Dispute in Federal Court.

This Court need not look any further than *Hutchinson v. Parent*, 773 Fed. Appx. 288 (6th Cir. 2019), which is on point and controls. Therein, the Sixth Circuit determined that, where a party's federal court claims arise from the same transaction and occurrence and are logically related to an already existing state court action, Civ.R. 13(A) precludes a plaintiff from asserting the claims in federal court so as to avoid a multiplicity of actions. *Id.* at 290-93.

#### 1. Plaintiffs' claims in the Federal Complaint arise from the same set of transactions and occurrences as the State Court Cases and are waived.

Civ.R. 13(A) "requires all existing claims between opposing parties that arise out of the same transaction or occurrence to be litigated in a single lawsuit, regardless of which party initiates the lawsuit." *Rettig Enters., Inc. v. Koehler*, 68 Ohio St. 3d 274, 1994-Ohio-127, 626 N.E.2d 99, 102 (1994). "Ohio courts apply a two-prong test to determine whether Rule 13(A) bars a claim: (1) did the claim exist when the pleading was served in the prior case and (2) does the claim arise out of the transaction or occurrence that is the subject matter of the opposing claim?" *Hutchinson*, 773 Fed. Appx. at 291.

12

Without question, Plaintiffs' claims here are logically related to the State Court Cases, and not just because Plaintiffs first initiated the State Court Cases nearly three (3) years ago. Similar to the claims at issue in *Hutchinson*, because Plaintiffs first asserted their claims in the State Court Cases nearly three (3) years ago, "there is no question that they existed" when certain Movants asserted their counterclaims in the State Court Cases. *See id.* Indeed, "[i]t makes no difference…that the opposing claim in the earlier action was a counterclaim rather than a complaint or that the present claim was originally filed as a complaint in the earlier action and dismissed without prejudice after the defendant filed its counterclaim," which is precisely what occurred here. *Rettig*, 626 N.E.2d at 102.

As to the second prong, a cursory review of the State Court Cases reveals that: (i) the First State Court Case, brought by ABO, D. Mody, Zuk, and RSN Finance, is related to the purported JV Fraud, of which the purported Nadam and Bavaria MF Frauds are mere offshoots and all the related claims here are brought by ABO, Adam, D. Mody, Zuk, Zuk Marble, and RSN Finance; (ii) the Second State Court Case is related to the purported Loan Fraud and BAO and Adam assert claims for these alleged acts; and (iii) the Third State Court Case is related to the purported Property Fraud, for which Shnizel has asserted claims. "To determine whether claims arise out of the same transaction or occurrence, Ohio courts ask whether claims are 'logically related'—that is, whether 'separate trials on each of the respective claims would involve a substantial duplication of effort and time by the parties and the courts.'" *Hutchinson*, 773 Fed. Appx. at 290 (quoting *Rettig*, 626 N.E.2d at 103); *see also Great Lakes Rubber Corp. v. Herbert Cooper Co.,* 286 F.2d 631, 634 (3d Cir. 1961) (elaborating that claims are compulsory counterclaims where the claims "involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties.").

Here, all of Plaintiffs claims arise from the business relationship that began in 2017 between the Investors, Adam, the Nakhles, and Gutzky. Shnizel's purported Property Fraud serves as the foundation for Plaintiffs' other claims—without the initial voluntary and willing transfers and assignments by the Investors, no real estate deals between Plaintiffs and Movants would have come to fruition. Meanwhile, the purported Loan Fraud is intricately interwoven amongst the voluntary and willing real estate transactions of Adam, ABO, BAO, and the Investors, and certain of those transactions serve as the basis for the purported JV, Nadam, and Bavaria MF Frauds.

The same is true in the State Court Cases, where all but one affiliated Plaintiff initiated the respective State Court Cases in 2020 and 2021. The State Court Cases stem from Movants and Plaintiffs' business relationship, and those Plaintiffs initiated the State Court Cases as a result of the purported Property, Loan, and JV Frauds, of which the purported Nadam and Bavaria MF Frauds are offshoots.

Beyond the factual overlap, which could result in multiple jurors hearing the same sets of facts multiple times, the legality of the Movants and Plaintiffs' relationships and transactions are at issue in both the State Court Cases and the matter *sub judice*. For example, in addressing the same transactions and occurrences, the CCCCP and this Court would need to separately determine not only if Plaintiffs were defrauded but also the titles to the Properties, which could result in inconsistent rulings by the separate forums. To this end, not only did the CCCCP recognized the commonality of both the legal and factual issues amongst the parties to consolidate the State Court Cases, but this District already acknowledged the same and dismissed claims related to the same set of transactions and occurrences without prejudice.

### 2. Plaintiffs' claims are logically related to the State Court Cases.

"Ohio courts have consistently found Rule 13(A) preclusion where parties' later-brought

claims are offshoots of the same basic controversy involving a business relationship." *Hutchinson*, 772 Fed. Appx. at 292 (citing *Grill v. Artistic Renovations*, 2018-Ohio-747, ¶¶ 27-28, 106 N.E.3d 934, 941 (8th Dist.) (finding commonality amongst homeowner and general contractor as all claims were based on "the construction/remodeling contract"); *Ferrara v. Vicchiarelli Funeral Servs., Inc.,* 2016-Ohio-5144, ¶ 13, 69 N.E.3d 171, 175 (8th Dist.) (finding later-brought tort-based claims were logically related to earlier-brought contract-based claims as all claims "concerned the mishandling of the final arrangements of the [deceased]."); *Sherman v. Pearson*, 110 Ohio App. 3d 70, 673 N.E.2d 643, 646-47 (1st Dist. 1996) (holding that a tenant's personal injury action against her former landlord for a fall on a negligently maintained stairway was logically related to the landlord's prior forcible entry and detainer action for unpaid rent)). Indeed, even where "several distinct factual and legal issues" exist but the same basic controversy serves as the bedrock for the claims—such as the real estate transactions here—Civ.R. 13(A) precludes a plaintiff from bringing those claims in a separate action. *See Rettig*, 626 N.E.2d at 103.

Even more so than the business breakup in *Hutchinson*, the construction contract in *Grill*, the tort and contract claims regarding the funeral arrangements in *Ferrara*, or the negligence and eviction actions in *Sherman*, Plaintiffs' claims here not only logically relate to the counterclaims brought and pending in the State Court Cases but also are nearly identical to the claims all but one Plaintiff initiated in the State Court Cases. Nor are the legal issues here limited to only contract, tort, *or* equitable relief, but instead, Plaintiffs bring a kitchen sink full of claims sounded in fraud, contract, tort, equitable relief, and federal statue,[6] which will complicate litigating these issues on multiple fronts in multiple courts. Simply put, Plaintiffs were compelled to bring the claims of the

---

[6] It should be noted that the federal courts do not have exclusive jurisdiction over claims under the RICO Act; rather, the CCCCP is permitted to hear these claims should they be adequately pleaded. *See Tafflin v. Levitt*, 493 U.S. 455, 459-60.

Federal Complaint in response to the counterclaims pending in the State Court Cases, each of which were compulsory, and are now precluded from doing so based upon their failure. Accordingly, Civ.R. 13(A) requires that the Court dismiss the entirety of Plaintiffs' claims, ***with prejudice***.

    C.   **Plaintiffs Failed to Allege—and Cannot Allege—the Necessary Elements of a RICO Act Claim, Which are Subject to a Heightened Standard of Scrutiny.**

To plead the necessary elements of a RICO Act violation under 18 U.S.C. § 1962(c), a plaintiff must allege: (i) the existence of two or more predicate offenses; (ii) the existence of an "enterprise;" (iii) a nexus between the pattern of racketeering and the enterprise; and (iv) an injury to business or property as a result of the alleged racketeering activity. *See VanDenBroeck v. CommonPoint Mortg. Co.,* 210 F.3d 696, 699 (6th Cir. 2000); *Kovach v. Access Midstream Partners, L.P.,* Case No. 5:15-cv-616, 2016 U.S. Dist. LEXIS 37882 at *15 (N.D. Ohio Mar. 23, 2016); *see also Sivak v. United Parcel Serv. Co.,* 28 F. Supp. 3d 701, 719 (E.D. Mich. 2014) (articulating the elements as "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."). In addition to the foregoing, Plaintiffs must satisfy the heightened particularity requirements of Federal Rule of Civil Procedure 9(b) with respect to the elements of mail or wire fraud as underlying elements of Plaintiffs' RICO Act claim. *See Kovach,* 2016 U.S. Dist. LEXIS 37882 at *15. "This includes alleging the 'time, place, and content' of the fraudulent acts, the existence of a fraudulent scheme, the intent of the participants in the scheme, and 'the injury resulting from the fraud,'" in addition to the other elements of a RICO Act claim. *Jackson v. Segwick Claims Mgmt. Serves, Inc.,* 699 F.3d 466, 475 (6th Cir. 2012); *see Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir. 1984) (upholding district court's dismissal of RICO claims where the complaint failed to plead fraud with adequate particularity).

Here, Plaintiffs merely plead in generalities, which is insufficient to meet the stringent pleading requirements imposed on a RICO Act plaintiff. In particular, Plaintiffs did not point to any specific time, place, or content of any mailing or internet or telephone communication to constitute mail or wire fraud. Plaintiffs also cannot put forth anything more than conclusory statements regarding the alleged scheme to commit the purported mail or wire fraud. Plaintiffs are further unable to allege the existence of a continuing enterprise that intended to defraud. Despite Plaintiffs' hopes of bringing Federal causes of action, Plaintiffs' claims amount to nothing more than general accusations, which Fed. R. Civ. P. 9(b) aims to prevent.

### 1.  Plaintiffs cannot show mail or wire fraud occurred.

As the necessary predicate to support their RICO Act claim, Plaintiffs allege mail and wire fraud.[7] "Mail fraud consists of (1) a scheme to defraud, and (2) use of the mails in furtherance of the scheme. The elements of wire fraud are essentially the same except that one must use the wires in furtherance of the scheme to defraud." *Kovach*, 2016 U.S. Dist. LEXIS 37882 at *25 (internal citations omitted). Plaintiffs must also allege intent to "establish a scheme to defraud, which is satisfied by showing the defendant acted either with a specific intent to defraud or with recklessness with respect to potentially misleading information." *Sivak*, 28 F. Supp. 3d at 720 (citing *United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1998)).

### a.  *Plaintiffs' conclusory statements do not establish that a scheme exists.*[8]

"A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of

---

[7] Throughout the Complaint, Plaintiffs also allude to "bank fraud," but Plaintiffs lack standing to allege bank fraud as a predicate act. *See Herrick v. Liberty League Int'l*, Case No. 1:07-cv-936, 2008 U.S. Dist. LEXIS 42527, at *11 (S.D. Ohio May 28, 2008); *see also Ward v. Nierlich*, Case No. 99-14227-CIV, 2008 U.S. Dist. LEXIS 24860 (S.D. Fla. Mar. 28, 2008); *Honorable v. Easy Life Real Estate System, Inc.,* 182 F.R.D. 55, 563 (N.D. Ill. 1998).

[8] To the extent that any scheme could be said to exist among Movants, the scheme did not further the purported fraud tranches. Rather, Movants used communications channels to memorialize the many transactions at issue and not to conduct actual fraud, which Plaintiffs point to after the fact.

4863-1731-0557, v. 1

money." *Jamieson*, 427 F.3d at 402 (citation omitted). With respect to the alleged misrepresentations, Rule 9(b)'s heightened pleading requirements are met where the plaintiff is able to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (further quotation marks and citation omitted).

Plaintiffs make no attempt whatsoever to point to specific statements and instead rely on after-the-fact circumstances to infer a scheme by Movants. To this end, there is no explanation by Plaintiffs as to how the statements were fraudulent at the time they were made. Indeed, in the purported Loan Fraud, Plaintiffs admit that George Nakhle and RSN I fulfilled initial obligations. Compl. at ¶¶ 200-05. With the purported JV Fraud, ABO never funded RSN Finance, and ABO's failures to do so relieved RSN Properties of its funding obligations. *Id.* at ¶ 156. Meanwhile, the agreement between Adam and George Nakhle to instead use the Land Contracts' proceeds to fund RSN Finance explains additional allegations under the purported JV Fraud tranche. *Id.* at ¶159. Throughout all times depicted in the Federal Complaint, Plaintiffs and their purported assignors acted willfully and consciously, entering into transactions with Movants even after issues arose, including assigning the Land Contracts to Movants, who then paid the proceeds therefrom to RSN Finance, which undercuts Plaintiffs' purported Property Fraud tranche.

### b. *Plaintiffs' conclusory statements do not establish the necessary scienter requirement.*

Despite the crucial requirement of scienter to support their RICO Act claims, Plaintiffs again plead in general, conclusory statements without providing any specific acts on behalf of Movants to demonstrate intent. Plaintiffs must allege intent to "establish a scheme to defraud, which is satisfied by showing the defendant acted either with a specific intent to defraud or with

18

recklessness with respect to potentially misleading information." *Sivak*, 28 F. Supp. 3d at 720 (citing *United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1998)). For example, Plaintiffs state that the Property LOA, Land Contracts, Lot One Supplemental Agreement, and Lot Two Supplemental Agreement were executed "in each case with no intention of performing on their obligations under those agreements," but Plaintiffs do not allege any specific acts of Movants that would demonstrate the Movants actual intent at execution. Compl. at ¶ 315. Instead, Plaintiffs merely point to events occurring after the fact. In another instance related to the purported Property Fraud, Plaintiffs offer the conclusion that Movants had "no intentions of paying the full purchases prices and deferred rents," without offering anything more. Compl. at ¶ 251. Likewise, Plaintiffs put forth a single, conclusory statements as to recklessness. Compl. at ¶ 100.

Throughout the Complaint are mere generalities as to Movants purported intent. Indeed, Plaintiffs do not allege ***any*** set of facts that demonstrates the ***actual intent*** of the Movants and instead rely on circumstances occurring after the fact. Accordingly, Plaintiffs have failed to plead the requisite element of scienter, and the Court should dismiss Plaintiffs' RICO Act claim.

### 2.  Plaintiffs failed to allege the necessary elements to demonstrate an enterprise.

Where an association-in-fact enterprise is alleged, such as here, which consists of both individuals and entities, "the complaint must set forth three structural features: 'a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 794 (6th Cir. 2012) (quoting *Boyle v. United States*, 556 U.S. 938, 946, (2009)). "'Put another way, a plaintiff must show 'simply a continuing unit that functions with a common purpose.'" *Id.* (quoting *Boyle*, 556 U.S. at 948).

As Plaintiffs tacitly admit through their allegations, no continuing unit exists to constitute

an enterprise. George Nakhle and his entities and Adam and his entities broke away from not only the common entities but also Gutzky and the Investors to create the entities used in the purported JV, Nadam, and Bavaria Frauds. *See* Compl. at ¶¶ 119-123, 203-05, 90-102. Indeed, George Nakhle and Adam's side dealings sever the allegations, especially when considering the involvement of Zuk, Zuk Marble, and D. Mody in RSN Finance. *Id.* at ¶¶ 86-89, 118-21.   Even further, the purported Property Fraud was, as Plaintiffs allege, between the Investors and Movants. *Id.* at ¶¶ 64-70. Accordingly, the Federal Complaint fails to state with particularity that an actual enterprise exists. As a result, the Court should dismiss the RICO Act claim, which then requires dismissal of the remaining claims for lack of supplemental subject matter jurisdiction under 28 U.S.C. § 1367.

### D. Like Plaintiffs' RICO Act Claim, Plaintiffs Cannot Meet the Heightened Pleading Requirements for Their Fraud Claims.

Just as with Plaintiffs' RICO Act claim, the Court should dismiss Plaintiffs' claims for fraud against Movants. Under Fed. R. Civ. P. 9(b), "in all averments of fraud…the circumstances constituting fraud…***shall be stated with particularity***." Fed. R. Civ. P. 9(b)(emphasis added). At minimum, a plaintiff "must allege the time, place, and content of the alleged misrepresentation on which the plaintiff relied; the fraudulent scheme, the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. Elliott v. Brickman Grp., Ltd., LLC,* Case No. 1:10-cv-392, 2011 U.S. Dist. LEXIS 165842, at *12 (Aug. 25, 2011 (S.D. Ohio) (citing *U.S. ex rel. Marlar v. BWXT Y-12, LLC,* 525 F.3d 439, 444-455 (6th Cir. 2008)). "An allegation of fraud requires heightened pleading because it naturally presents '**a high risk of abusive litigation**.'"[9] *Ross v. PennyMac Loan Serves. LLC,* 761 Fed. Appx. 491, 495 (6th Cir. 2019)

---

[9] As described above, the Counterclaims include a claim for abuse of process as Counterclaimants have alleged that Plaintiffs are intending to use the legal system, especially by bringing claims for fraud, to delay and impede Movants' refinancing.

((emphasis added) citing *Republic Bank & Trust Co. v. Bear Stearns & Co.,* 683 F.3d 239, 247 (6th Cir. 2012)). To survive a motion to dismiss fraud claims, the plaintiff must put a defendant on fair notice by pleading facts such as "the nature of the allegedly fraudulent statements, how [defendant] had knowledge of the alleged falsity, who made the allegedly false statements on [defendant]'s behalf, where the allegedly false statements were made, or when the allegedly false statements were made." *Ross*, 761 Fed. Appx. at 495.

Here, similar to Plaintiffs' RICO Act claim, Plaintiffs make no attempt to describe the "who, what, when, where, and why" of their claims. Particularly, Plaintiffs do not and cannot allege how Movants had knowledge of the purported falsity of their statements as Movants always intended to consummate the real estate transactions at issue, which is notably evidenced by Movants initial payments of the Third Loan and absolution of RSN Properties as a result of ABO's failures to fund RSN Finance. *See, e.g.,* Compl. at ¶¶156, 201-05. Indeed, Plaintiffs plead that Movants committed fraud by asserting that Movants committed fraud, which is fatal to Plaintiffs' fraud claim. *See Ross,* 761 Fed. Appx. at 495 (stating that "[w]ithout [Plaintiff]'s extrinsic evidence, we are left with the conclusory statement that [Defendant] knowingly and falsely represented and/or specifically withheld information…Essentially, [Plaintiff] pleads that [Defendant] committed fraud by asserting that [Defendant] committed fraud."). Similar to *Ross*, Plaintiffs willingly, voluntarily, and consciously negotiated and entered into the real estate agreements at issue which is fatal to Plaintiffs' fraud claims. *See id.* ("[T]he complaint indicates that [Plaintiff] and [Defendant] negotiated an arms-length contract. Therefore, the constructive fraud allegation must also fail."). Accordingly, the Court should dismiss Plaintiffs' claims against Movants for fraud as a result of Plaintiffs' failures to plead with particularity, demonstrating Plaintiffs' **abusive litigation** herein, as required under Fed. R. Civ. P. 9(b).

### E.  Piercing the corporate veil and the faithless servant doctrine are theories of liability—not standalone claims under Ohio law.

With Counts XI, XV, and XXXVII, Plaintiffs conflate theories of liability and recovery with actual, recognized claims under Ohio law. In Ohio, piercing the corporate veil is a mode of recovery not an actionable claim. *See Dana Partners, LLC v. Koivisto Constructors & Erectors, Inc.,* 11th Dist. Trumbull, Case No. 2011-T-0029, 2012-Ohio-6294, ¶ 58; *Advantage Bank v. Waldo Pub., LLC,* 3d Dist. Marion, Case No. 9-08-67, 2009-Ohio-2816, ¶ 42; *Hitachi Med. Sys. Am., Inc. v. Branch*, Case No. 5:09-cv-1575, 2011 U.S. Dist. LEXIS 111907, at fn 1 (N.D. Ohio May 13, 2011); *see also Hodak v. Madison Capital Mgmt.,* 348 F. App'x 83, 94-95 (6th Cir. 2009) (noting that under Kentucky law, "the doctrine of piercing the corporate veil is recognized as being an equitable remedy, not a cause of action unto itself, which is used as a means of imposing liability."); *In re RCS Engineered Prods., Co.,* 102 F.3d 223, 226 (6th Cir. 1996) (noting that under Michigan law, "an alter ego claim is not by itself a cause of action). Accordingly, Count XXXVII of the Complaint must be dismissed.

Likewise, the faithless servant doctrine is a theory of imposing liability rather than a standalone claim. *See Perdew v. Process Div., Inc.,* C.P. Franklin, Case No. 12CV11033, 2013 Ohio Misc. LEXIS 10822, at *6-8 (Feb. 21, 2013) (merging the faithless servant doctrine with a claim for tortious interference to constitute one claim); *Cheryl & Co. v. Krueger*, 536 F. Supp. 3d 182, 212-13 (S.D. Ohio Apr. 28, 2021) (recognizing the faithless servant doctrine as a subset of a claim for the breach of the duty of loyalty related to an employee). Notably here, Plaintiffs make no allegations that amount to George Nakhle as an employee of RSN Finance or any other entity. Rather, George Nakhle—as Plaintiffs state—was a manager and/or member of the entities. *See, e.g,* Compl. at ¶ 89. Therefore, Plaintiffs' faithless servant doctrine theory is subsumed by claims for breaches of fiduciary duty, which, further militates in support of dismissal.

4863-1731-0557, v. 1

**F.  Plaintiffs Lack Standing to Bring a Derivative Action or Claims as Assignees.**

As pointed out by Lieberman, Fed. R. Civ. P. 23.1 requires that a derivative plaintiff verify the complaint. *See* ECF # 60-4; Fed. R. Civ. P. 23.1. Plaintiffs did nothing of the sort here. In addition, Plaintiffs provide no support for the legal conclusion that Shnizel and Adam have authority to bring claims on behalf of the Investors or Bavaria. "Generally speaking, standing is [a] party's right to make a legal claim or seek judicial enforcement of a duty or right." *Wells Fargo Bank, N.A. v. Horn*, 142 Ohio St. 3d 416, 2015-Ohio-1484, ¶ 8. And, in order to have standing, the party bringing the claim "must demonstrate an immediate, pecuniary interest in the subject matter of the litigation." *Landmark Nat'l II Corp. v. Green*, 7th Dist. Mahoning, Case No. 16 MA 0072, 2017-Ohio-7706, ¶14 (Sept. 11, 2017) (citing *In re Estate of Horton*, 9th Dist. Summit, Case Nos. 20695, 20741, 2002-Ohio-1377. Indeed, when an assignee brings a claim, "the assignee 'must allege **and prove the assignment**.'" *Landmark*, 2017-Ohio-7706, ¶ 14 (quoting *Hudson & Keyse, LLC v. Yarnevic-Rudolph,* 7th Dist. Jefferson, Case No. 09 JE 4, 2010-Ohio-5938 (Nov. 29, 2010) and *Zwick & Zwick v. Suburban Constr. Co.,* 103 Ohio App. 83, 84 (8th Dist. 1956)) (emphasis added). Once again, Plaintiffs, particularly Shnizel and Adam, make nothing more than a conclusory statement that they are the assignees of the Investors and Bavaria. Without anything further to verify these statements at this stage, Movants may be exposed to potential multiple judgments or the Investors and Bavaria may be precluded from bringing claims in the future.

**IV.  CONCLUSION.**

For the foregoing reasons, Movants request that the Court dismiss all claims against Movants because: (i) Ohio Rule of Civil Procedure 13 precludes Plaintiffs from bringing claims against Movants; (ii) Plaintiffs fail to allege necessary elements of their claims; (iii) piercing the corporate veil and the faithless servant doctrine are not standalone claims; and (iv) Plaintiffs did not attach necessary materials for derivative or assigned claims.

Respectfully submitted,

**KOHRMAN JACKSON & KRANTZ, LLP**

*/s/ Scott A. Norcross*
SCOTT A. NORCROSS (0073407)
NATHAN F. STUDENY (0077864)
PAIGE M. RABATIN (0097916)
ANDREA V. ARNOLD (0099455)
One Cleveland Center, 29th Floor
1375 East Ninth Street
Cleveland, Ohio  44114
Phone:  (216) 696-8700
Fax:  (216) 621-6536
Email: san@kjk.com; nfs@kjk.com; pmr@kjk.com;
ava@kjk.com
*Counsel for Movants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2023, a true and accurate copy of the foregoing was submitted to the Court via the CM/ECF system, which will serve the same upon all counsel of record.

*/s/ Scott A. Norcross*
Scott A. Norcross (0073407)

*Counsel for Movants*

24