THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| DROR ADAM, *et al.,* | : | Case No: 1:22-CV-02183 |
|  | : |  |
| Plaintiffs, | : |  |
|  | : | Judge Pamela A. Barker |
| -v- | : |  |
|  | : |  |
| GEORGE NAKHLE, *et al.,* | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

May 26, 2023

*/s/Michael J. Matasich*
MICHAEL J. MATASICH (0078333)
McDonald Hopkins LLC
600 Superior Avenue, East, Suite 2100
Cleveland, OH 44114
Telephone:     (216) 348-5400
Facsimile:     (216) 348-5474
E-mail:  mmatasich@mcdonaldhopkins.com

and

Thomas C. Sima (*pro hac vice to be filed*)
The Law Firm Of Thomas C. Sima
275 Madison Ave #14
New York, NY 10016
Telephone:     (212) 796-6661
Email: tom@tsima.com

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ......................................................................................................................... 4

   I.    STANDARD OF REVIEW ....................................................................................... 4

   II.   OHIO RULE OF CIVIL PROCEDURE 13(A) DOES NOT REQUIRE DISMISSAL. ......................... 5

   III.  THE RICO CLAIMS HAVE BEEN PLEADED WITH SUFFICIENT SPECIFICITY. ......................... 8

      A.   The Complaint, together with its exhibits, provides sufficient details to sustain a RICO pleading. ................................................................... 8

      B.   A scheme existed. .................................................................................. 12

      C.   Scienter has been reasonably shown or can be reasonably inferred. ........................ 13

      D.   Specific examples were provided. .......................................................... 14

      E.   Defendants' opposition to the Complaint sounds in factual claims to be resolved in the instant action. ................................................................ 14

   IV.  THE FRAUD CLAIMS HAVE BEEN PLEADED WITH SUFFICIENT SPECIFICITY. ....................... 15

   V.   THE CONTINGENT CLAIMS ARE SUFFICIENTLY PLEADED. ............................................. 15

   VI.  PLAINTIFFS HAVE STANDING. ............................................................................ 17

   VII.  A NOTE ON JUDGE POLSTER'S DISMISSAL. ............................................................. 18

CONCLUSION ..................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                                                     <u>Page</u>

*ADSC Holdings, Inc. v. Damman*,
    Case No. 3:20 CV 2554, 2021 WL 4189724, *2 (N.D. Ohio Feb. 10, 2021)....................16

*Aiu Ins. Co. v. Olmecs Medical Supply, Inc.*,
    2005 WL 3710370 (E.D.N.Y. Feb. 22 2005)......................................................................9

*Allied Diversified Constr., Inc. v. Elite Mech., Inc.*,
    No. 1:16CV334, 2016 WL 7034238, **2-6 (S.D. Ohio Dec. 2, 2016) ...........................15

*Allstate Ins. Co. v. Linea Latina De Accidentes, Inc.*,
    781 F.Supp.2d 837 (D. Minn. 2011)................................................................................14

*Anderson v. City of Blue Ash*,
    798 F.3d 338 (6th Cir. 2015) ............................................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................................4, 14

*Cheryl & Co. v. Krueger*,
    536 F. Supp. 3d 182 (S.D. Ohio 2021) ...........................................................................16

*City Dental Lab, LLC v. Ladd*,
    No. 2:15-CV-2407, 2016 WL 4573993, at **10-12 (S.D. Ohio Sept. 1, 2016)...............16

*Colorado River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976)..........................................................................................................7

*Columbia Natural Res., Inc. v. Tatum*,
    58 F.3d 1101 (6th Cir. 1995) .............................................................................................4

*Columbus Homes Ltd. v. S.A.R. Constr. Co.*,
    10th Dist. Franklin Nos. 06AP-759 & 06AP-760, 2007-Ohio-1702, ¶¶ 51-54 .................17

*Exal Corp. v. Roeslein & Assocs., Inc.*,
    Case No. 4:12-CV- 01830 (N.D. Ohio Oct. 2, 2012) .......................................................15

*Ferrara v. Vicchiarelli Funeral Servs., Inc.*,
    69 N.E.3d 171 (Ohio Ct. App. 2016)................................................................................6

*Foley v. Am. Elec. Power*,
    425 F. Supp. 2d 863, 873-875 (S.D. Ohio 2006).............................................................16

*Fradkin v. Ernst*,
    98 F.R.D. 478, 482 (N.D. Ohio 1983) ............................................................17

*Frank v. Dana Corp.*,
    547 F.3d 564 (6th Cir. 2008) ........................................................................10

*Handy v. Shaw, Bransford, Veilleux & Roth*,
    325 F.3d 346 (D.C. Cir. 2003) ........................................................................5

*Hapgood v. City of Warren*,
    127 F.3d 490 (6th Cir. 1997) ..........................................................................5

*Hishon v. King Spalding*,
    467 U.S. 69 (1984) ..........................................................................................4

*Hudson & Keyse, L.L.C. v. Yarnevic-Rudolph*,
    7th Dist. Jefferson No. 09 JE 4, 2010-Ohio-5938 ...........................................18

*Hutchison v. Parent*,
    773 F. App'x 288 (6th Cir. 2019) ................................................................5, 6

*JAC Holding Enterprises, Inc. v. Atrium Capital Partners, LLC*,
    997 F.Supp.2d 710 (E.D.Mich.2014) ..............................................................9

*Kostrzewa v. City of Troy*,
    247 F.3d 633 (6th Cir. 2001) ..........................................................................4

*Landmark Natl. II Corp. v. Green*,
    7th Dist. Mahoning No. 16 MA 0072, 2017-Ohio-7706 ..................................17

*Madera v. KTC Express, Inc.*,
    No. 3:19-CV-01516, 2022 WL 2916868, at *8 (N.D. Ohio July 25, 2022) ..................16

*Menzies v. Seyfarth Shaw LLP*,
    943 F.3d 328 (7th Cir. 2019) ..........................................................................8

*Muskegan Hotels, LLC v. Patel*,
    986 F.3d 692 (7th Cir. 2021) ..........................................................................8

*O'Nesti v. DeBartolo Realty Corp.*,
    862 N.E.2d 803 (2007) ....................................................................................5

*Ouwinga v. Benistar 419 Plan Servs., Inc.*,
    694 F.3d 783 (6th Cir. 2012) ........................................................................12

*Performance Contracting, Inc. v. Seaboard Sur. Co.*,

iii

163 F.3d 366 (6th Cir. 1998) ............................................................................4

*Perdew v. Process Div., Inc.*,
   C.P. Franklin, Case No. 12CV11033, 2013 Ohio Misc. LEXIS 10822 (Feb. 21, 2013)...16

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
   631 F.3d 436 (7th Cir. 2011) ........................................................................9

*Quality Assocs. v. Procter & Gamble Distrib. LLC*,
   949 F.3d 283 (6th Cir. 2020) ....................................................................5, 7

*Rettig Enterprises, Inc. v. Koehler*,
   68 Ohio St. 3d 274 (Ohio 1994)....................................................................6

*Roberto v. Brown Cnty. Gen. Hosp.*,
   59 Ohio App. 3d 84, 86 (quoting 2 Restatement of the Law 2d, Agency (1958),
   Section 469) ...............................................................................................17

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
   473 U.S. 479 (1985).......................................................................................8

*Shawn Grill v. Artistic Renovations*,
   106 N.E.3d 934 (Ohio Ct. App. 2018) ...........................................................6

*Sherman v. Pearson*,
   110 Ohio App. 3d 70 (Ohio Ct. App. 1996) ....................................................6

*Smart v. Sunshine Potato Flakes, L.L.C.*,
   307 F.3d 684 (8th Cir. 2002) .........................................................................5

*Song v. Rom*,
   No. 1:15-CV-1438, 2016 WL 726899, at **2-3 (N.D. Ohio Feb. 24, 2016) ..................15

*State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*,
   2014 WL 555199 (E.D.Mich. Feb. 12, 2014) .................................................9

*State Farm Mutual Automobile Insurance v. Pointe Physical Therapy, LLC*,
   107 F. Supp. 3d 772 (E.D. Mich. 2015).........................................................9

*Stoller v. Fumo*,
   No. 19 C 02546, 2020 WL 2404879 (N.D. Ill. May 12, 2020) .........................8

*Surowitz v. Hilton Hotels Corp.*,
   383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966).......................................17

*United States ex rel. Joshi v. St. Luke's Hosp., Inc.*,

iv

441 F.3d 552 (8th Cir. 2006) ........................................................................................14

*United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*,
    836 F.3d 770 (7th Cir. 2016) ...................................................................................8

*In accord Universal Health*,
    2014 WL 5427170 (Oct. 24, 2014) ........................................................................13

*Williams v. Duke Energy Int'l, Inc.*,
    681 F.3d 788 (6th Cir.2012) .....................................................................................9

*Zwick & Zwick v. Suburban Const. Co.*,
    103 Ohio App. 83 (1956) ........................................................................................18

## **Statutes**

Fed. R. Civ. P. 9(b) ........................................................................................................15

Fed. R. Civ. P. 12(b)(6) ...............................................................................................4, 8

Fed. R. Civ. P. 23.1 ........................................................................................................17

18 U.S.C. 1962 .................................................................................................................8

32066307.1

Plaintiffs, Dror Adam, an individual acting personally and as assignee of the interest of Bavaria MF LLC, Adam Beres LLC a/k/a Adam Beres One LLC, Beres Adam One LLC, D. Mody Properties, Ltd., RSN Finance, LLC, Shnizel OH LLC, and Zuk Domestic Holdings, Inc. (collectively, the "Plaintiffs"), hereby respectfully submit this memorandum of law in opposition to the Motion to Dismiss (the "Motion") submitted by defendants George Nakhle ("George Nakhle"); Samir Nakhle ("Samir Nakhle", and, together with George Nakhle, the "Nakhles"); Richard Russel Gutzky ("Gutzky"); GS & M LLC ("GS & M"); Nadam LLC ("Nadam"); RG Holdings Delaware, LLC ("RG Delaware"); RG Holdings Perm, LLC ("RG Perm"); RG Holdings Perm II, LLC ("RG Perm II"); RSN Holdings I, LLC ("RSN I"); RSN Holdings II, LLC ("RSN II"); RSN Holdings 4, LLC ("RSN 4"); RSN Holdings XV, LLC ("RSN XV"); RSN Holdings XXI, LLC ("RSN XXI"); RSN Holdings Delaware, LLC ("RSN Delaware"); R.S.N. Properties LLC ("RSN Properties"); United Synergy Group, LLC ("United Synergy"); 6395 Pearl Road LLC ("Pearl Road"); and Park Knoll, LLC ("Park Knoll", and, together with GS & M, Nadam, RG Delaware, RG Perm, RG Perm II, RSN I, RSN II, RSN 4, RSN XV, RSN XXI, RSN Delaware, RSN Properties, United Synergy, and Pearl Road, the "Nakhle Entities"; the Nakhle Entities along with the Nakhles and Gutzky are referred to herein as the "Defendants").

## PRELIMINARY STATEMENT

Plaintiffs seek damages against the Nakhles and Gutzky for violations of the RICO Act and for other wrongdoing as alleged in the Plaintiffs' First Amended Complaint (hereinafter, the *Complaint*).

Contrary to the narrative that the Defendants have set forth, the Complaint is not the product of a "business deal gone bad" and has not been brought as the result of forum shopping.

1

The Complaint, including the voluminous exhibits attached thereto, details multiple representations, warranties and guarantees made by the Defendants to induce the investors to part with over 200 properties in the course of three tranches of what is called the Property Fraud in the Complaint, more properties in the JV Fraud, one property in each of the Bavaria Fraud and the Nadam Fraud, and further monetary assets in the Loan Fraud.

When read in the aggregate, it is clear that the Plaintiffs have pleaded, with required specificity, an ongoing and complex set of fraudulent schemes by the Defendants which led to the Plaintiffs and related investors losing over $12,000,000 in value.

The matter has been brought in this Court because of the Federal claims involved and a desire to consolidate all actions against the Defendants.

Plaintiffs respectfully argue that this Court is the proper venue and that Defendants are mischaracterizing the law in an attempt to not only dismiss this action, but ensure that their clients are able to profit from their fraud by enjoining the Plaintiffs from ever filing any action against them again.

**FACTUAL BACKGROUND**

The principal facts of the wide-ranging and systematic plan perpetrated by George Nakhle, Samir Nakhle and Richard Russell Gutzky (the "Nakhle Defendants"), acting through entities created by them (the "Nakhle Entities"), to defraud the Plaintiffs out of millions of dollars' worth of cash, real property and other assets, has been detailed at length in the Complaint filed with this Court.

As the Complaint details, the Nakhles and Gutzky systematically converted over 200 real properties, loans, and other property of the Plaintiffs, making use of the instrumentalities of interstate commerce in general and committing mail fraud and wire fraud in particular.

2

The scheme was brazen and accompanied by flat out lies that were told to the Plaintiffs that led to the filing of the Complaint.  The principals of the Plaintiffs, foreign citizens, believed the Defendants' lies and in the process handed over title to the properties without adequately protecting themselves against the risk of loss.

The Nakhles and Gutzky first had title to properties transferred to entities under their control, after which they obtained mortgages for the properties, effectively converting them into cash.  Upon obtaining this cash, the Nakhles and Gutzky simply refused to pay the money due to the Plaintiffs.  Both the Complaint and the exhibits attached thereto set forth these multiple schemes in detail and with the requisite level of detail needed to satisfy relevant pleading requirements.

It is true that several actions were previously brought in state court, and one action was brought as a straightforward debtor-creditor action in Federal court.  Plaintiffs brought these various actions because at first, the investors acted in an uncoordinated fashion and did not understand the full scope of how they had been defrauded.

As information became available to them, particularly the revelation that the Nakhles and Gutzky were able to obtain mortgages far in excess of the amounts they had represented to the investors, and subsequently pocketed those amounts, the investors decided to consolidate their efforts.  Due to the coordinated nature of the fraudulent schemes perpetrated against them, the investors decided that a single action with RICO claims in Federal court was the proper venue.

The initial attempt to consolidate the various actions in the then-existing Federal action against RSN Properties in this court, styled *D. Mody Properties et al. v. R.S.N. Properties, LLC et. al.*, Case Number 1:21-CV-1395 (the **Federal RSN Properties Action**), made in March 2022, failed because the Defendants claimed that a preliminary settlement in state court, which was the

result of further fraud on the part of the Defendants and which they were wholly unable to perform on, was binding on Plaintiffs.

Plaintiffs were subsequently able to vacate any purported settlement in the state actions and dismiss the claims made in state court without prejudice to refile the instant action.

## ARGUMENT

### I. STANDARD OF REVIEW

In assessing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court treats all well pleaded allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *see also Kostrzewa v. City of Troy*, 247 F.3d 633, 638 (6th Cir. 2001). Dismissal is proper only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claims that would entitle [him] to relief." *Id*. (quoting *Performance Contracting, Inc. v. Seaboard Sur. Co*., 163 F.3d 366, 369 (6th Cir. 1998). Furthermore, courts construe the complaint in the light most favorable to the nonmoving party. *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). A complaint will survive a motion to dismiss if it "contain[s] either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Performance Contracting, Inc*., 163 F.3d at 369; *see also Hishon v. King Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

As this memorandum will outline, the Plaintiffs have satisfied the pleading requirements and have outlined clear and viable legal theories which permit this Court to see that all material elements have been pleaded to sustain recovery under the theories advanced.

## II.   OHIO RULE OF CIVIL PROCEDURE 13(A) DOES NOT REQUIRE DISMISSAL.

Defendants would have this Court believe that it is obligated to dismiss Plaintiffs' action on the basis of Ohio Civ. R. 13(A). They are mistaken and have come to this conclusion on the basis of a misreading of the case law.

The Sixth Circuit recently reviewed the question of application of Ohio Civ. R. 13(A) in *Quality Assocs. v. Procter & Gamble Distrib. LLC*, 949 F.3d 283 (6th Cir. 2020) and clarified the application of the rule by Federal courts.

First, the court noted that " … there is no statute or equitable doctrine authorizing a federal court to enforce state compulsory-counterclaim law or otherwise manage duplicative state-federal litigation. *See* Miller, Federal Practice and Procedure § 1418 ; *see also Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 350–52 (D.C. Cir. 2003) (discussing state-federal distinction); *Smart v. Sunshine Potato Flakes, L.L.C.* , 307 F.3d 684, 687 (8th Cir. 2002) (same). **Unsurprisingly, then, we have "enforced" such law only by way of preclusion doctrine.** See, e.g., *Hutchison v. Parent*, 773 F. App'x 288 (6th Cir. 2019); *Hapgood v. City of Warren*, 127 F.3d 490 (6th Cir. 1997)." *Id*. at 288 (emphasis added).

The *Quality Assocs*. court then clarified instances in which a preclusion argument may be made by noting that, under Ohio law, *res judicata* encompasses the two related concepts of claim preclusion, also known as *res judicata* or estoppel by judgment, and issue preclusion, also known as collateral estoppel (citing *Anderson v. City of Blue Ash*, 798 F.3d 338, 350 (6th Cir. 2015) (quoting *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 862 N.E.2d 803, 806 (2007). The court concluded it preclusion analysis by stating:

> However classified, though, preclusion comes into play only when a state court has entered a *final judgment*. See *Glidden Co. v. Lumbermens Mut. Cas. Co*., 112 Ohio St.3d 470, 861 N.E.2d 109, 118 (2006) (issue preclusion); *Grava v. Parkman Twp*., 73 Ohio St.3d 379, 653 N.E.2d 226, 229 (1995) (claim preclusion); *see also Migra v. Warren City Sch. Dist. Bd. of Educ*., 465

U.S. 75, 80–81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (observing that the Constitution and federal law require federal courts to give preclusive effect only to "state-court judgment[s]"). And, here, the state trial court's decision dismissing [Appellant]'s § 1981 claim on the merits was not a final judgment. Rather, it was an interlocutory *decision* —that is, it did not dispose of the entire case, and can therefore be reconsidered at any point until final judgment. *See Harkai v. Scherba Industries, Inc*., 136 Ohio App.3d 211, 736 N.E.2d 101, 105 (2000) ("[A] 'judgment' must be distinguished from a 'decision.' "). It is not entitled to preclusive effect.

*Id*. at 289 (emphasis supplied).

It becomes apparent from reviewing the cases cited by Defendants that most of their sources are based on arguments of preclusion following a final judgment of a case.

*Rettig Enterprises, Inc. v. Koehler*, 68 Ohio St. 3d 274 (Ohio 1994) involved a case that had been settled and dismissed following execution of a binding settlement agreement. *Hutchison v. Parent*, No. 15-3604 (6th Cir. May 15, 2019) involved a case where identical claims were filed after the plaintiff signed a consent judgment waiving the initial claims in a prior action. In *Shawn Grill v. Artistic Renovations*, 106 N.E.3d 934 (Ohio Ct. App. 2018), a prior court had issued a judgment on the subject matter of the original claims and a new lawsuit was initiated thereafter. The court in *Ferrara v. Vicchiarelli Funeral Servs., Inc*., 69 N.E.3d 171 (Ohio Ct. App. 2016) found *res judicata* because a prior, identical case had been dismissed on summary judgment and the only difference in the second action was that new parties had been added with identical claims. Defendants' remaining precedent, *Sherman v. Pearson*, 110 Ohio App. 3d 70 (Ohio Ct. App. 1996) was a straightforward case revolving around the question of whether a tort claim needed to be brought as a counterclaim to a landlord-tenant contractual dispute.

In the instant action, the previous state cases were voluntarily dismissed in order to bring a consolidated action that included Federal RICO claims.  There have been court *decisions*, but there have been no *judgments* issued by any court.

The *Quality Assocs*. Court found that " … in the state-federal concurrent jurisdiction context, 'the pendency of an action in [a] state court' generally is considered 'no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Quality Assocs*. at 288, citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).  The court continued:

> Indeed, as the Court put it nearly a century ago, in *Penn General Casualty Co. v. Commonwealth of Pennsylvania ex rel. Schnader*, "[w]here the judgment sought is strictly *in personam*, for the recovery of money or for an injunction compelling or restraining action by the defendant, both a state court and a federal court having concurrent jurisdiction may proceed with the litigation, at least until judgment is obtained in one court which may be set up as *res adjudicata* in the other." 294 U.S. 189, 195, 55 S.Ct. 386, 79 L.Ed. 850 (1935). That this case implicates compulsory counterclaims does not, in our view, alter the basic federalist principle undergirding this precedent, namely, that litigants are free to split their claims between state and federal court and "race to the first judgment," even if that stratagem is ill-advised and inefficient. *See* Miller, Federal Practice and Procedure § 1418 (acknowledging this point); Ben Clements, Note, *Pre-Judgment Enforcement of Federal Rule of Civil Procedure 13(a)*, 74 Cornell L. Rev. 167, 196–97 (1988) (same).

> *Id*. at 289.

The decision of the Sixth Circuit is sufficient to demonstrate that the Defendants are arguing bad law.

> … we hold, because a federal court cannot enforce a state compulsory-counterclaim rule against a federal litigant outside the preclusion context, and because [Appellant]'s claim is not yet precluded here (because the state court has not yet entered a final judgment), the district court lacked authority to base its judgment of dismissal on this ground.  Consequently, we reverse and remand.

> *Id*. at 285.

7

Accordingly, Plaintiffs respectfully submit that this matter should not be dismissed on the basis of Ohio Civ. R. 13(A).[1]

### III.     THE RICO CLAIMS HAVE BEEN PLEADED WITH SUFFICIENT SPECIFICITY.

Defendants have argued that the Plaintiffs have not pleaded their RICO claims with sufficient specificity.  To make a RICO claim pursuant to 18 U.S.C. § 1962(c), Plaintiffs must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc*., 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).  As this memorandum will now demonstrate, these pleading standards have been met.

### A.     The Complaint, together with its exhibits, provides sufficient details to sustain a RICO pleading.

In a RICO matter, where "the alleged predicate acts of racketeering involve fraud, the complaint must describe the 'who, what, when, where, and how' of the fraudulent activity to meet the heightened pleading standard demanded by Rule [of Civil Procedure] 9(b)." *Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 698 (7th Cir. 2021) (quoting *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019)); *see also Stoller v. Fumo*, No. 19 C 02546, 2020 WL 2404879, at *5 (N.D. Ill. May 12, 2020) (collecting cases). Plaintiffs must provide "precision and some measure of substantiation" to the fraud allegations. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016)).

However, as the court in *Presser* continued, "While applying this shorthand to describe the requirements of Rule 9, we also have warned that 'courts and litigants often erroneously take

---

[1] To be clear, Plaintiffs do not believe Ohio Civ. R. 13(A) has any application here.  First, the Rule applies to compulsory counterclaims in state court.  Defendants have not filed any complaints in state court in response to which Plaintiffs would be required to file any counterclaims.  Second, Plaintiffs dispute that their claims in this action arise out of the same occurrence or transaction as Defendants' pending counterclaims in the state court.  And third, Ohio Civ. R. 13(A) cannot be raised under Fed. R. Civ. P. 12(b)(6), which looks only to whether the complaint alleges facts which, if construed as true, would entitle the plaintiff to relief.  But the Court does not need to reach these arguments, because Defendants' legal premise has been squarely rejected by the Federal Courts.

an overly rigid view of the formulation' and that the precise details that must be included in a complaint 'may vary on the facts of a given case.'" *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co*., 631 F.3d 436, 442 (7th Cir. 2011)." *Presser* at 776.

*State Farm Mutual Automobile Insurance v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772 (E.D. Mich. 2015) is a case that contains allegations of an ongoing and elaborate scheme of similar complexity with the instant action.  The *State Farm* court elaborated on the evidentiary standard to be applied in such cases, stating, "It is a principle of basic fairness that a plaintiff should have an opportunity to flesh out her claim through evidence unturned in discovery. Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Id*. at 788 (Citing *JAC Holding Enterprises, Inc. v. Atrium Capital Partners, LLC*, 997 F.Supp.2d 710, 727 (E.D.Mich.2014), which itself quoted *Williams v. Duke Energy Int'l, Inc*., 681 F.3d 788, 803 (6th Cir.2012)).

The *State Farm* court continued, "In complex civil RICO actions involving multiple defendants, Rule 9(b) does not [ ] require that the 'temporal or geographic particulars of each mailing made in furtherance of the fraudulent scheme be stated with particularity, but only that the plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme." *Id*. at 788-9 (citing *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc*., No. 12–11500, 2014 WL 555199, at *5 (E.D.Mich. Feb. 12, 2014), which itself quoted *Aiu Ins. Co. v. Olmecs Medical Supply, Inc.*, No. 04–2934, 2005 WL 3710370 (E.D.N.Y. Feb. 22 2005)).

The situation at hand here is clearly distinct from the precedent Defendants cite in support of their argument, namely, *Frank v. Dana Corp*., 547 F.3d 564 (6th Cir. 2008).  In

*Frank*, the plaintiffs purchased stock in the defendant corporation and alleged vague statements of fraud at the time of the purchase.

In the instant action, there were at least five overlapping fraudulent schemes that defrauded 80 individual investors of over 194 properties in one of the schemes alone.

Furthermore, *State Farm* highlights that a complaint must be read in conjunction with its exhibits: "The fact that Defendants may have to read the allegations of the Complaint in conjunction with the detail provided in the Exhibits does not render the pleading insufficient to put them on notice of the fraud that they are alleged to have committed or of which they are alleged to have been a part." *State Farm* at 791.

Plaintiffs relied, *inter alia*, on the representations and warranties that were made in the purchase agreements and associated land contracts, as well as the guarantees issued by the Nakhles. The Complaint clearly states that these representations, warranties and guarantees were made and the documents on their face provide information as to the time, place and context of their execution. The Complaint further clearly states that all documents were communicated via mail (or courier) and email to the Plaintiffs.

The Complaint also clearly details that the Nakhles convinced the Plaintiffs to cancel the agreements and deprive themselves of the assurances they believed they had, following which time Gutzky acted as a guarantor to provide the Nakhle Entities with mortgages, the proceeds of which were then pocketed, rather than paid to the Plaintiffs. The Plaintiffs had transferred title in the belief and based on the assurances by the Nakhles and Nakhle Entities that the proceeds would be used to pay the purchase price for the properties.

This scheme is detailed and Defendant's allegation, made at page 17 of their memorandum of law in support of their motion to dismiss ("Plaintiffs also cannot put forth

anything more than conclusory statements regarding the alleged scheme to commit the purported mail or wire fraud"), is willfully blind to the level of detail supplied.

As the Complaint sets forth at ¶ 297, " … every Land Contract, every Supplemental Agreement, and every other notarized document for 192 properties in the Property Fraud, every property in the JV Fraud, the property in the Nadam Fraud and the property in the Bavaria Fraud, were signed by sending originals through the mails or via courier service."

With respect to wire fraud, the Complaint sets forth at ¶ 301, " … the Nakhles in particular engaged in ***dozens if not hundreds of phone calls with the Plaintiffs and Property Fraud Investors***, misrepresenting intentions and inducing (1) the Property Fraud Investors to transfer their properties without adequate compensation, (2) the members of Finance and Zuk Marble to invest money that was subsequently embezzled, (3) ABO to invest money in Nadam that was embezzled, (4) Adam, ABO and BAO to extend loans that were never repaid and (5) the seller of the Bavaria Property to transfer it without adequate compensation, in each case with the purpose of defrauding the relevant Plaintiffs.  Many of these phone calls were international, as the principals of all of the Plaintiffs are Israeli citizens." (Emphasis added).

These statements are in addition to the detailed description that precedes them of the exact scheme that was perpetrated by the Defendants to defraud the Plaintiffs, which runs for dozens of pages and provides a step by step explanation of how the various frauds were executed.

To provide the "temporal or geographic particulars", as the *State Farm* court termed it, of each communication would force the Complaint to engage in a level of granular detail that would expand its scope, already over 100 pages, into the thousands of pages and essentially force the Plaintiffs to demonstrate the level of detail expected in trial proceedings rather than at the stage

11

of filing a complaint.  Plaintiffs fully intend to present a complete and damning picture of the evidence against Defendants after discovery has been completed.  Now is not the time.

With each tranche of the Property Fraud, and with each capital investment into the JV Fraud, and in a similar fashion with the Bavaria Fraud and the Loan Fraud, valuable assets were contributed by the Plaintiffs, and that value went into the pockets of the Nakhles and Gutzky in a brazen fashion.

### B.  A scheme existed.

The Complaint also clearly lays out the existence of a scheme.  As the court in *Ouwinga v. Benistar 419 Plan Servs., Inc*., 694 F.3d 783, 793 (6th Cir. 2012), found, "In order to establish the existence of an "enterprise" under § 1962(c), a plaintiff is required to prove: (1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; (2) that the members of the enterprise functioned as a continuing unit with established duties; and (3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged." (citing *United States v. Chance*, 306 F.3d 356, 372 (6th Cir.2002).

Whether each individual actor can be proven at this stage to have participated in each aspect of every scheme is irrelevant; in all cases the Nakhle Entities acted under the direction of George Nakhle, Samir Nakhle, and Richard Gutzky, acting in concert.  Each of the three individuals provided guarantees – George Nakhle and Samir Nakhle to the investors, and Richard Gutzky to CoreVest to obtain the mortgages.  Each of the three then pocketed the proceeds rather than paying for the properties they had fraudulently acquired.  George acted as the face of the operations, while Samir was his assistant.  Gutzky was their "deep pocket" for assistance in obtaining mortgages and other financial matters.  While some of the Nakhle Entities were special purpose vehicles, others predated the fraud and clearly demonstrate the existence of a formal ongoing structure.

### C.    Scienter has been reasonably shown or can be reasonably inferred.

Defendants claim of lack of scienter is likewise faulty.  As the *State Farm* court concluded based on similar fact patterns in *Physiomatrix,* 2014 WL 555199, and *In accord Universal Health*, 2014 WL 5427170, a complaint is adequately pleaded with respect to RICO claims when " … allegations in the Complaint flesh out the details of the alleged scheme to defraud, the use of the mails in furtherance of that scheme and the facts from which scienter can be inferred …" *State Farm* at 789.

To take Tranche One of the Property Fraud as just one example, Plaintiffs have alleged that the Nakhles and Gutzky, acting together, formed entities to conduct their fraud (¶¶ 59-60), signed guarantees while lacking the financial means to perform under the same as an inducement to the investors to sell properties to them (¶ 67), executed land contracts with further assurances (¶¶ 68-70), used mail and email to transfer these assurances (¶ 73), executed and recorded the land contracts (¶¶ 105-107 and exhibits), failure by the Defendants to perform under the land contracts (¶¶ 114-115), false representations to the Plaintiffs to induce them to transfer the first tranche of properties with the assurance mortgage proceeds would be used to pay the purchase price for the properties (¶¶ 126-128), the concerted efforts of the Nakhles and Gutzky to obtain mortgages for the properties and subsequent personal use of the proceeds (¶¶ 131-138) and the brazen lies made that the Nakhle Entities were unable to obtain sufficient funds to repay the investors for tranche one (¶¶ 142-144).

The Complaint then alleges in detail how this pattern was repeated with the other two tranches, complete with dates, and shows similar concerted acts with respect to the other frauds. Most of the relevant documents under which the frauds were perpetrated have been appended to the complaint.

13

**D.**   **Specific examples were provided.**

Plaintiffs also provided a specific example in the Willowhurst Property at ¶¶ 259-272 of the Complaint.  As the court in *Allstate Ins. Co. v. Linea Latina De Accidentes, Inc.*, 781 F.Supp.2d 837, 847 (D.Minn.2011) held, "Where a plaintiff alleges a systematic practice of the submission of fraudulent claims over an extended period of time, the plaintiff need not allege the specific details of every fraudulent claim. Instead, the plaintiff must allege some representative examples of the fraudulent conduct with particularity." (citing *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir.2006).

In providing this level of detail, Plaintiffs have demonstrated the existence of an ongoing scheme pursuant to which the Nakhles and Gutzky acted in concert to defraud the Plaintiffs and related investors of properties and money.  Plaintiffs respectfully submit that this level of detail is sufficient to overcome any motion to dismiss the RICO claims.

Defendants' claim that no actual scienter has been conclusively demonstrated merely highlights the fact that they are holding Plaintiffs to a trial level of proof in a motion to dismiss, to which we now turn our attention.

**E.**   **Defendants' opposition to the Complaint sounds in factual claims to be resolved in the instant action.**

As previously stated, in a motion to dismiss a court treats all well pleaded allegations in the complaint as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  Defendants, in seeking to dismiss this action, attempt to characterize issues of fact as "generalities" and "self-serving statements".  As much as Defendants may wish that they were able to obtain dismissal solely on the grounds that there are disputed facts, this is insufficient to dismiss the action.  Defendants' arguments are based on issues of fact that this court should be allowed to determine.

IV.     **THE FRAUD CLAIMS HAVE BEEN PLEADED WITH SUFFICIENT SPECIFICITY.**

Defendants claim that the Plaintiffs have not pleaded fraud with specificity.  As with the RICO claim, this claim is grounded in Federal Rule of Civil Procedure 9(b).

This court, in *Exal Corp. v. Roeslein & Assocs., Inc*., Case No. 4:12-CV-01830 (N.D. Ohio Oct. 2, 2012), wrote, "The Sixth Circuit has held that, in complying with Rule 9(b), a plaintiff, at a minimum, must allege the time, place and content of the alleged misrepresentation on which he or she relied, the identity of those who made the misrepresentations, the fraudulent intent of the defendants and the injury resulting from the fraud."

Plaintiffs respectfully submit that the analysis which has been conducted in Point V, above, demonstrates that the minimum pleading standards have been met for fraud as well as for the RICO claims, and notes the further claim that the fraud claims generally have not been pleaded with specificity to make it clear that the Plaintiffs dispute the allegations made by Defendants.

V.     **THE CONTINGENT CLAIMS ARE SUFFICIENTLY PLEADED.**

In Count XXXVII, Plaintiffs allege a claim to pierce the corporate veil to hold the Nakhles and Gutzky personally liable for the fraudulent and illegal acts they committed through their Controlled Entities.  As piercing the corporate veil must be alleged in the complaint, it is common practice to allege piercing the corporate as a separate claim, and courts routinely deny motions to dismiss on grounds that it is only a form of relief.  *E.g., Song v. Rom*, No. 1:15-CV-1438, 2016 WL 726899, at \*\*2-3 (N.D. Ohio Feb. 24, 2016) (recognizing piercing the corporate veil is a form of relief, but denying motion to dismiss claim to pierce the corporate veil where sufficient facts were alleged to support it); *Allied Diversified Constr., Inc. v. Elite Mech., Inc*., No. 1:16CV334, 2016 WL 7034238, \*\*2-6 (S.D. Ohio Dec. 2, 2016) (recognizing piercing the corporate veil is a form of relief, but denying motion for judgment on the pleadings where

15

sufficient facts were alleged to pierce the corporate veil); *City Dental Lab, LLC v. Ladd*, No. 2:15-CV-2407, 2016 WL 4573993, at **10-12 (S.D. Ohio Sept. 1, 2016) (same).  See, also, *Madera v. KTC Express, Inc*., No. 3:19-CV-01516, 2022 WL 2916868, at *8 (N.D. Ohio July 25, 2022) (denying summary judgment to defendant on plaintiff's request to pierce the corporate veil).  Not one of the cases cited by Defendants held that a separate claim to pierce the corporate veil should be dismissed because it is a form of relief.

In Counts VI and XV, Plaintiffs allege certain of Defendants, acting as agents, breached their duties of trust and loyalty to certain of Plaintiffs as principals, thereby forfeiting any compensation these Defendants might otherwise be entitled to as agents under the faithless servant doctrine.  The faithless servant doctrine can be alleged as a standalone claim.  *See Foley v. Am. Elec. Power*, 425 F. Supp. 2d 863, 873-875 (S.D. Ohio 2006) (denying summary judgment on standalone counterclaim alleging faithless servant doctrine); *ADSC Holdings, Inc. v. Damman*, Case No. 3:20 CV 2554, 2021 WL 4189724, *2 (N.D. Ohio Feb. 10, 2021) (denying motion to dismiss faithless servant claim).

Curiously, Defendants cite *Cheryl & Co. v. Krueger*, 536 F. Supp. 3d 182 (S.D. Ohio 2021).  But in that case, the plaintiff alleged the faithless servant doctrine as a standalone claim, and the court analyzed it as a standalone claim, ultimately determining that evidence of a mere two arguably disloyal communications that caused no damage to the plaintiff could not sustain the claim.  *Id*. at 212-213.  Plaintiffs also cite *Perdew v. Process Div., Inc*., C.P. Franklin, Case No. 12CV11033, 2013 Ohio Misc. LEXIS 10822 (Feb. 21, 2013), but that was an interlocutory state trial court order of no precedential value.

Defendants also argue – without citing any legal authority – that the faithless servant claim fails because Plaintiffs fail to allege George Nakhle was an employee of RSN Finance or

any other entity.  But the faithless servant doctrine applies to *agents*, not just employees, and Plaintiffs allege George Nakhle acted as an agent.  *See Columbus Homes Ltd. v. S.A.R. Constr. Co.*, 10th Dist. Franklin Nos. 06AP-759 & 06AP-760, 2007-Ohio-1702, ¶¶ 51-54 (affirming finding against controlling owner of entities under faithless service doctrine, which "states that an agent is entitled to no compensation for conduct which is disobedient or a breach of his duty of loyalty"); *Roberto v. Brown Cnty. Gen. Hosp.*, 59 Ohio App. 3d 84, 86 (quoting 2 Restatement of the Law 2d, Agency (1958), Section 469) ("an agent is entitled to no compensation for conduct which is disobedient or a breach of his duty of loyalty")

Defendants' arguments concerning Plaintiffs' claims to pierce the corporate veil and alleging the faithless servant doctrine are meritless.  Defendants' Motion to Dismiss in that regard should be denied.

## VI.  PLAINTIFFS HAVE STANDING.

Defendants seek dismissal of derivative claims, presumably the derivative claims filed on behalf of RSN Finance, because the First Amended Complaint is not verified pursuant to Fed.R.Civ.P. 23.1. But Defendants cite no legal authority in support of their request for dismissal.  Moreover, Plaintiffs are obtaining and will file a verification, which is sufficient to satisfy the Rule.  *See Fradkin v. Ernst*, 98 F.R.D. 478, 482 (N.D. Ohio 1983) (accepting later-filed verification, holding Rule 23.1 is intended to clear the court of "strike suits," not to impede derivative actions) (*citing Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966)).

Defendants also assert that Plaintiffs Dror Adam and Shnizel OH, LLC, who allege claims as assignees of Bavaria MF LLC and the Property Fraud Investors, are required to "prove" they are assignees at the pleading stage.  That is not the law, and the cases cited by

Defendants do not stand for any such proposition. In *Landmark Natl. II Corp. v. Green*, 7th Dist. Mahoning No. 16 MA 0072, 2017-Ohio-7706, the court held that evidence presented subsequent to the filing of a motion for an order of revivor sufficiently established the movant was an assignee of the original judgment. In *Hudson & Keyse, L.L.C. v. Yarnevic-Rudolph*, 7th Dist. Jefferson No. 09 JE 4, 2010-Ohio-5938, the court decided at the summary judgment stage that the plaintiff failed to present sufficient evidence that it was the assignee. And in *Zwick & Zwick v. Suburban Const. Co.*, 103 Ohio App. 83 (1956), the appellate court reversed judgment in favor of a plaintiff who neither pleaded he was the assignee nor proved it at any stage of the proceedings.

Thus, Defendants' efforts to defeat the derivative claims and assigned claims at the pleading stage must fail, and their Motion to Dismiss in that regard must be denied.

## VII.    A NOTE ON JUDGE POLSTER'S DISMISSAL.

Plaintiffs wish to briefly address the fact that Defendants, in their memorandum in support of their motion to dismiss, claim that Judge Polster "supports" their position and have used his name to bolster their arguments. Plaintiffs do not agree with their interpretation of the events that led to the dismissal of the Federal RSN Properties Action and submit that Defendants' counsel, who were not involved in the Federal RSN Properties Action, are basing their conclusions solely on the minutes and order, dated March 16, 2022, dismissing the Federal RSN Properties Action, but not on the actual conference, in which they did not participate.

The dismissal of the Federal RSN Properties Action occurred immediately following a case management conference held on March 16, 2022 with Judge Polster.

At the case management conference, when the Plaintiffs expressed their intention to amend the complaint in the Federal RSN Properties Action to add the RICO claims in

18

substantially the form set forth in the Complaint to the then-existing action, Defendants' counsel at the time raised the objection that as of the date of the conference, the Defendants were objecting to dismissal of the various state actions and alleging a settlement had been reached.

Plaintiffs understood that Judge Polster expressed that due to the open question as to whether there was a settlement (which, if binding, would preclude claims in Federal court), amending the Federal RSN Properties Action complaint to include the new claims was not proper until the questions before the state courts were decided.  This led to Judge Polster's statement that the "state court" was the "proper venue" for the action, which Plaintiffs understood to mean that the settlement issue needed to be resolved first.  Counsel for Plaintiffs recall Judge Polster stating that the matter could be resubmitted in Federal court if Plaintiffs so chose if and when the settlement issue had been resolved.

Since that time, the Cuyahoga County court has ruled that there was not a settlement and the state cases were dismissed without prejudice.  Because Judge Polster did not rule out the possibility of filing a future Federal court case, but only cautioned that a complaint should not be filed until the settlement issue was resolved, Plaintiffs have taken this admonition to heart and filed their complaint only after the settlement issue was resolved in their favor and the state cases properly dismissed without prejudice.

Defendants, by using Judge Polster's name, are casting the decision made by Judge Polster as a decision made after much deliberation, when in fact Judge Polster declared his intention to dismiss the action almost immediately after learning of the settlement dispute and expressed no interest in taking on an expanded action when he had an overfull docket including, *inter alia*, complex opioid lawsuits.

19

## CONCLUSION

The Plaintiffs in this action are the victims of a concerted set of fraudulent schemes. They filed the Complaint not as the result of forum shopping, but because after coordinating their efforts and learning more about the course of events that led them to the loss of substantial assets, they determined that this Court is the proper forum and venue for their claims.

Defendants have not demonstrated reasonable grounds for dismissal, either of the RICO claims, general fraud claims, or any other claims made by the Plaintiffs. Their arguments attempting to apply Ohio Civ. R. 13(A), to question the pleading of certain claims as inappropriate and to challenge the standing of the Plaintiffs, all rest on faulty legal precedent and reasoning and are nothing more than attempts to deny the Plaintiffs the opportunity to recover their lost assets. For the reasons set forth in this memorandum, the Plaintiffs respectfully request that this Court deny the motion to dismiss made by the Defendants.

*/s/ Michael J. Matasich*
MICHAEL J. MATASICH (0078333)
McDonald Hopkins LLC
600 Superior Avenue, East, Suite 2100
Cleveland, OH 44114
Telephone:     (216) 348-5400
Facsimile:      (216) 348-5474
E-mail:  mmatasich@mcdonaldhopkins.com

and

Thomas C. Sima (*pro hac vice to be filed*)
The Law Firm Of Thomas C. Sima
275 Madison Ave #14
New York, NY 10016
Telephone:     (212) 796-6661
Email: tom@tsima.com

*Attorneys for Plaintiffs*

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(f)

Undersigned counsel certifies that this case has not been assigned to a track and that the

preceding memorandum complies with the 20-page limit set forth in Local Rule 7.1(f).

*/s/ Michael J. Matasich*
Michael J. Matasich (0078333)
*One of the Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2023, a copy of the foregoing was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties

indicated on the electronic filing receipt.

*/s/ Michael J. Matasich*
MICHAEL J. MATASICH (0078333)
*One of the Attorneys for Plaintiffs*

21